Leonard H. Church and Martha A. Church v. Commissioner.
Church v. Commissioner
Docket No. 3010-69 SC.
United States Tax Court
T.C. Memo 1970-146; 1970 Tax Ct. Memo LEXIS 212; 29 T.C.M. (CCH) 636; T.C.M. (RIA) 70146; June 9, 1970, Filed Leonard H. Church, pro se, 10534 Garfield Ave., Cleveland, Ohio.Gary R. DeFrang, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: The Commissioner *214 determined a deficiency of $92.45 in petitioners' Federal income tax for the calendar year 1966. The sole issue presented for our decision is whether petitioners are liable for the tax on self-employment income under the provisions of sections 1401 and 1402 of the Internal Revenue Code of 1954. [1]
Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. A summary of the pertinent facts is set forth below. At the time of filing their petition herein, the legal residence of Leonard H. Church (hereinafter referred to as petitioner) and Martha A. Church was Portland, Oregon. 637 Their joint Federal income tax return for the calendar year 1966 was filed with the district director of internal revenue at Portland, Oregon. During the period from January 1, 1966, to July 12, 1966, petitioner was an employee of All-Crete Seal Co., Portland, Oregon, and Schnitzer Brothers, Portland, Oregon. From July 13, 1966 until the present date, *215 petitioner has been a "specialty contractor" whose activities as such have consisted of the installation of walk-in refrigerator coolers and freezer boxes. Petitioner has installed refrigeration equipment throughout the states of Oregon and Washington and in various cities in Utah, California, Nevada, Minnesota, Kansas, and Idaho. Petitioner does not attempt to solicit installation jobs, but he remains prepared to perform such service, and is contacted regularly by either the manufacturer or the purchaser of refrigeration equipment for the assembly and installation of same. Petitioner does not have a continuing or long-term employment contract to install refrigeration equipment, but instead enters into an individual contract with respect to each installation job. Under the terms of such contracts, petitioner furnishes the carpenter tools required for installation of the refrigeration equipment. The parties for whom petitioner installs refrigeration equipment do not supervise petitioner, and do not have the contractual rights to supervise petitioner with respect to the method he employs for installation of such equipment. Petitioner does not hire others to assist him in the installation *216 work. The payment received by petitioner for his services is specified in each individual contract, and such payment is conditional upon satisfactory completion of the installation. Rhodes Refrigeration, Inc., (hereinafter referred to as Rhodes Refrigeration) is a manufacturer of refrigeration equipment. During the period July 13, 1966, through December 31, 1966, petitioner entered into approximately 30 separate contracts with Rhodes Refrigeration, agreeing to install refrigeration equipment which it had sold. The installations were made at the places of business of the purchasers of said equipment. Pertinent provisions of the contract, which was completed and executed by petitioner and Rhodes Refrigeration in each instance when petitioner installed refrigeration equipment for Rhodes Refrigeration during 1966, are set forth below: Upon satisfactory completion of this installation, payment in the amount of… will be made. Conditions to prevail: I. Installation contractor agrees to install according to Rhodes specifications. II. Contractor agrees to warranty his work for a period of 60 days following installation. III. Payment will not be made until the customer signs the *217 appropriate release form indicating completion to his satisfaction. IV. Rhodes guarantees all parts and materials supplied will be to specifications. Petitioner is morally opposed to the program provided under the Social Security Act. While he allowed social security tax to be deducted from his wages at times in the past when he was an employee, he does not intend to accept any benefits under the Social Security Act. During the period July 13, 1966 to December 31, 1966, petitioner received payments in the total amount of $6,070.82 from Rhodes Refrigeration, Inc., pursuant to the terms of the refrigeration installation contracts. Petitioner paid expenses during such period in the total amount of $1,827.11, which expenses were related to his activities as a "specialty contractor." In the joint Federal income tax return filed by petitioner and his wife for the taxable year 1966, petitioner did not report a self-employment tax on his net earnings of $4,243.71 from the installation of refrigeration equipment. Petitioner has not filed an application for exemption from the self-employment tax. In his statutory notice dated March 19, 1969, respondent asserted a deficiency for self-employment *218 tax due on petitioner's net earnings as a refrigeration installer pursuant to the provisions of section 1401. Opinion Respondent contends that the amounts earned by petitioner from his refrigeration installation activities constitutes "self-employment income" taxable under the provisions of section 1401. [2] Petitioner advances 638 a two-fold position to support the contention that he is not liable for the self-employment tax: (1) that he is not self-employed and (2) that the exemption from the self-employment tax under section 1402(h) for certain religious sects is unconstitutionally narrow since it fails to include those such as petitioner who, while not a member of any particular religious sect, are nevertheless, opposed on moral grounds to any form of social security. *219 With respect to petitioner's first contention, he argues that he is neither an employee nor a self-employed individual. We certainly agree with petitioner that in his capacity as a specialty contractor for the installation of refrigeration equipment he did not have the status of an "employee" [3] as that term is defined in section 3121(d) and the regulations promulgated thereunder. [4]Section 31.3121(d)-1(c)(2), Employment Tax Regs., provides in pertinent part the following guidelines for making the factual determination as to whether the employer-employee relationship exists: Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. * * * Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the *220 services. * * * Petitioner emphatically testified that the persons for whom he installed refrigeration equipment did not have the contractual right to supervise the method of installation, but did have the right to refuse payment if they were dissatisfied with the result of his work. The terms of the *221 contract (set forth in our findings of fact) which petitioner entered into in each instance when he installed Rhodes Refrigeration equipment during 1966 bears out his testimony on this point. We also note that the parties have stipulated that petitioner furnished his own carpenter tools for each installation job. Hence, it seems clear that petitioner's activities as a refrigeration installer were performed as an independent contractor rather than as an employee. Nevertheless, petitioner insists that he was not self-employed and therefore did not have any "self-employment income" subject to the tax imposed under section 1401. Section 1402(b) defines the term "self-employment income" to mean the taxpayer's "net earnings from self-employment" to the extent of a ceiling amount ($6,600 for 1966) less any wages paid to the taxpayer during the year. The term "net earnings from self-employment" is defined in section 1402(a) to mean the gross income derived from any trade or business conducted by the taxpayer, less allowable deductions. For purposes of the self-employment tax provisions, section 1402(c) *222 provides that the term "trade or business" shall have the same meaning that it has when used in section 162, except that such term does not include the performance of services by employees and certain other instances not applicable here. Petitioner's statements at trial in support of his position that he was not self-employed appear to bear upon the question of whether his activities as a refrigeration installation contractor constitute the conduct of a trade or business for purposes of the self-employment tax. [5] This is a factual question to be determined from the surrounding facts and 639 circumstances of each individual case. Higgins v. Commissioner, 312 U.S. 212, 217 (1941). Careful scrutiny of the entire record herein convinces us that the activities in question do constitute the active conduct of a trade or business. *223 The term "trade or business" is not defined in the Internal Revenue Code, and an all-inclusive definition thereof has never been formulated by the courts. Of course, participation in a single transaction for profit normally does not constitute the conduct of a trade or business. Industrial Research Products, Inc., 40 T.C. 578, 589 (1963). Generally, however, for section 162 purposes (and therefore for purposes of the self-employment tax provisions), an individual can be said to be carrying on a trade or business where he regularly engages in extensive activity for profit over a substantial period of time. McDowell v. Ribicoff, 292 F. 2d 174, 178 (C.A. 3, 1961). Petitioner admitted at trial, as we think he must, that he engaged in his activities as a refrigeration installation contractor for the purpose of deriving a profit. Furthermore, there can be no doubt that petitioner's installation activities were regular, continuous, and extensive enough to qualify as the conduct of a trade or business. The facts clearly show that during the last six months of the year *224 involved herein petitioner installed refrigeration equipment for Reodes Fefrigeration on approximately 30 separate occasions. Insofar as we can determine from this record, petitioner's refrigeration installation activities constituted his sole source of livelihood during this six-month period. Viewed in this posture, we feel constrained to hold that petitioner's activities as a refrigeration installation contractor constitute the conduct of a trade or business, and the gain derived therefrom is "self-employment income" for purposes of sections 1401 and 1402. As regards petitioner's second contention, at the hearing in this proceeding, he quite sincerely expressed strong moral convictions against the social security system. He stated that although he had permitted the social security tax to be deducted from his wages at times when he was an employee, his moral convictions would prevent him from accepting any benefits under the social security program. Petitoner candidly admits that he is not a member of a religious sect satisfying the requirements of section 1402(h)[6] for exemption from the self-employment tax. However, he challenges the constitutionality of this exemption on the *225 basis that its narrow classification discriminates against those who are not members of the requisite religious sect but still conscientiously oppose social security, and on the further basis that such exemption violates the first amendment provision to the effect that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; * * *." *226 Unfortunately for the petitioner, these same contentions were raised, carefully considered, and rejected by this Court in the recent opinion of William E. Palmer, 52 T.C. 310 (1969). We fail to find any material distinction between that case and the case at bar. The petitioners in Palmer were devout Seventh Day Adventists who, like the petitioner herein, had no scruples in general against the payment of taxes but whose beliefs prohibited them from accepting the benefits funded by the self-employment tax. In the Palmer opinion, we first noted that the tax imposed upon both employees and self-employed individuals has been held to be constitutional ( Helvering v. Davis, 301 U.S. 619 (1937); and Cain v. United States, 211 F. 2d 375 (C.A. 5, 1954)), and we declined to hold otherwise under the facts and circumstances presented therein. Additionally, we upheld the constitutionality of the exemption provisions of section 1402(h) over the assertions of the petitioners that such provisions violated the "due process" clause of the fifth amendment and the establishment clause of the first amendment, as follows: The limitation by Congress of the exemption *227 to members of religious sects with established tenets opposed to insurance and which made reasonable provisions for their dependent members was in keeping with the overall welfare 640 purpose of the Social Security Act. This provision provided assurance that those qualifying for the exemption would be otherwise provided for in the event of their dependency. Congress could reasonably conclude that individuals on their own could not be relied upon to make such provision. * * * Although only some members of certain religious sects fall within the terms of the exemption, we find no violation of the establishment clause of the first amendment. The Draft Act of 1917, 40 Stat. 76, granted exemptions to conscientious objectors who were affiliated with a "wellorganized religious sect or organization * * * [then] organized and existing and whose existing creed or principles * * * [forbade] its members to participate in war in any form." These provisions were held constitutional over the argument, among others, that they tended toward the establishment of religion. Selective Draft Law Cases, 245 U.S. 366 (1918). In any legislative accommodation of religion there is an *228 inherent balancing of the interests represented by of the interests represented by the "free exercise" and the "establishment" clauses of the first amendment. See the concurring opinion of Mr. Justice Stewart in Sherbert v. Verner, 374 U.S. at 413. We cannot say that the balance struck by Congress in enacting the exemption clause here in controversy is constitutionally impermissible. (52 T.C. at 314). In view of the foregoing, we hold that petitioner is liable for the self-employment tax imposed under section 1401 upon the income he derived from his activities as a refrigeration installation contractor during the taxable year 1966. Accordingly, Decision will be entered for the respondent. Footnotes
1. All future statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise designated.↩
2. SEC. 1401 RATE OF TAX. (a) Old-Age, Survivors, and Disability Insurance. - In addition to other taxes, there shall be imposed for each taxable year, on the self-em-ployment income of every individual, a tax as follows: (1) in the case of any taxable year beginning after December 31, 1965, and before January 1, 1967, the tax shall be equal to 5.8 percent of the amount of the self-employment income for such taxable year; * * * (b) Hospital Insurance. - In addition to the tax imposed by the preceding subsection, there shall be imposed for each taxable year, on the self-employment income of every individual, a tax as follows: (1) in the case of any taxable year beginning after December 31, 1965, and before January 1, 1967, the tax shall be equal to 0.35 percent of the amount of the self-employment income for such taxable year;↩
3. Employees wages are of course not subject to the self-employment tax, but instead are subject to the employment tax provided under the Federal Insurance Contributions Act contained in secs. 3101 through 3126, chapter 21, I.R.C. 1954. ↩
4. Section 1402(d), I.R.C. 1954, provides that the term "employee" shall have the same meaning that it has for purposes of chapter 21 (sec. 3101 et seq. relating to the Federal Insurance Contributions Act). Sec. 3121(d) provides, in pertinent part, as follows: SEC. 3121. DEFINITIONS. * * * (d) Employee. - For purposes of this chapter, the term "employee" means - * * * (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee * * *.↩
5. In testimony before this Court, petitioner stressed the point that he does not solicit business, he does not have a business location or telephone, and he does not enter into continuing contracts with anyone regarding the services he performs. From these facts, he concludes that he is not carrying on a business, and is not self-employed.↩
6. Sec. 1402(h). Members of Certain Religious Faiths. - (1) exemption. - Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). * * *↩