WILLIAM E. AND CAROLYN S. PALMER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 782–68. Filed May 26, 1969.

William E. Palmer, pro se.
*Robert G. Faircloth*, for the respondent.

312

Petitioners admit that they do not fall within the precise terms of the exemption of section 1402(h).[2] They argue, however, with utmost candor and sincerity, that the provisions of the Social Security Act unconstitutionally restrict the free exercise of their religion by compelling them to participate in a life insurance program. The exemption of section 1402(h), they assert, is unconstitutionally narrow in scope since it extends a right or privilege to individuals with a particular religious belief only when they are members of a sect recognized as a body to have the same belief.[3]

This Court has the power to determine the constitutionality of a Federal taxing statute. See *Prather* v. *Commissioner*, 322 F. 2d 931

---

[2] SEC. 1402(h). MEMBERS OF CERTAIN RELIGIOUS FAITHS.—

(1) EXEMPTION.—Any individual may file an application (in such form and manner, and with such official, as may be prescribed by regulations under this chapter) for an exemption from the tax imposed by this chapter if he is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, or retirement or makes payments toward the cost of, or provides services for, medical care (including the benefits of any insurance system established by the Social Security Act). Such exemption may be granted only if the application contains or is accompanied by—

(A) such evidence of such individual's membership in, and adherence to the tenets or teachings of, the sect or division thereof as the Secretary or his delegate may require for purposes of determining such individual's compliance with the preceding sentence, and

(B) his waiver of all benefits and other payments under titles II and XVIII of the Social Security Act on the basis of his wages and self-employment income as well as all such benefits and other payments to him on the basis of the wages and self-employment income of any other person,

and only if the Secretary of Health, Education, and Welfare finds that—

(C) such sect or division thereof has the established tenets or teachings referred to in the preceding sentence,

(D) it is the practice, and has been for a period of time which he deems to be substantial, for members of such sect or division thereof to make provision for their dependent members which in his judgment is reasonable in view of their general level of living, and

(E) such sect or division thereof has been in existence at all times since December 31, 1950.

An exemption may not be granted to any individual if any benefit or other payment referred to in subparagraph (B) became payable (or, but for section 203 or 222(b) of the Social Security Act, would have become payable) at or before the time of the filing of such waiver.

[3] Petitioners' arguments are explicitly or inferentially based upon Amendments I and V of the Constitution of the United States which provide, *inter alia:*

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; * * *

\*     \*     \*     \*     \*     \*     \*

No person shall be * * * deprived of life, liberty, or property, without due process of law; * * *"

(C.A. 9, 1963), affirming a Memorandum Opinion of this Court; *Abraham J. Muste*, 35 T.C. 913 (1961); *Muriel Dodge Neeman*, 26 T.C. 864 (1956), affd. 255 F. 2d 841 (C.A. 2, 1958); *West Town State Bank*, 32 B.T.A. 531 (1935); *Rita O'Shaughnessy, Executrix*, 21 B.T.A. 1046 (1930), affirmed without discussion of point 60 F. 2d 235 (C.A. 6, 1932), certiorari denied 288 U.S. 605 (1932); *Independent Life Insurance Co. of America*, 17 B.T.A. 757 (1929), affd. 67 F. 2d 470 (C.A. 6, 1933), reversed on other grounds 292 U.S. 371 (1934). A provision should be enforced, however, unless it clearly appears unconstitutional. *Abraham J. Muste, supra*; *Rita O'Shaughnessy, Executrix, supra.*

The income tax imposed by the Social Security Act upon both employees and the self-employed has been held to be constitutional. *Helvering* v. *Davis*, 301 U.S. 619 (1937); *Cain* v. *United States*, 211 F. 2d 375 (C.A. 5, 1954). In these cases no argument was made that the tax constituted an encroachment upon the free exercise of the taxpayer's religion. Petitioners have no religious scruples against the payment of taxes. However, they resist this particular tax because their individual religious beliefs prohibit them from receiving certain benefits funded by the tax. No doubt, this circumstance results in a financial sacrifice by petitioners in order to observe their religious beliefs. But, in exercising its constitutional function and duty to provide for the general welfare, a legislature may often formulate a program which places some indirect burden on the free exercise of some religious beliefs. The Supreme Court, in *Braunfeld* v. *Brown*, 366 U.S. 599, 606 (1961), stated:

> To strike down, without the most critical scrutiny, legislation which imposes only an indirect burden on the exercise of religion, *i.e.*, legislation which does not make unlawful the religious practice itself, would radically restrict the operating latitude of the legislature. Statutes which tax income and limit the amount which may be deducted for religious contributions impose an indirect economic burden on the observance of the religion of the citizen whose religion requires him to donate a greater amount to his church; * * * The list of legislation of this nature is nearly limitless.

Benefits under the Social Security Act, including death benefits, are not automatic; the right to them is accrued only when certain preconditions, including, in all instances, a filing of an application to receive the benefits, are met. 42 U.S.C. sec. 402 (e) through (i); see *Ewing* v. *Gardner*, 185 F. 2d 781 (C.A. 6, 1950). Petitioners have not shown how the imposition of the tax forces them to violate the tenets of their religion. Consequently, we see no occasion for applying so "heroic" a remedy as declaring the Social Security Act unconstitutional. See *Cohan* v. *Commissioner*, 39 F. 2d 540 (C.A. 2, 1930).

Petitioners further challenge as unconstitutional the exemption provisions of section 1402(h).[4] In this connection we note that it is constitutionally permissible to accommodate a public service to the spiritual needs of the people. *Zorach* v. *Clauson*, 343 U.S. 306 (1952). In fact, a State may be required to do so when its program places a sufficiently direct burden on the free exercise of a religion. *Sherbert* v. *Verner*, 374 U.S. 398 (1963).

The limitation by Congress of the exemption to members of religious sects with established tenets opposed to insurance and which made reasonable provisions for their dependent members was in keeping with the overall welfare purpose of the Social Security Act. This provision provided assurance that those qualifying for the exemption would be otherwise provided for in the event of their dependency. Congress could reasonably conclude that individuals on their own could not be relied upon to make such provision. "No well-ordered society can leave to the individuals an absolute right to make final decisions, unassailable by the State, as to everything they will or will not do." *Board of Education* v. *Barnette*, 319 U.S. 624, 643 (1943). Congress has great latitude in formulating classifications within a taxing statute. *Abney* v. *Campbell*, 206 F. 2d 836 (C.A. 5, 1953). We cannot say that this particular classification was so arbitrary as to be violative of due process of law.[5]

Although only some members of certain religious sects fall within the terms of the exemption, we find no violation of the establishment clause of the first amendment. The Draft Act of 1917, 40 Stat. 76, granted exemptions to conscientious objectors who were affiliated with a "well-organized religious sect or organization * * * [then] organized and existing and whose existing creed or principles * * * [forbade] its members to participate in war in any form." These provisions were held constitutional over the argument, among others, that they tended toward the establishment of religion. *Selective Draft Law Cases*, 245 U.S. 366 (1918). In any legislative accommodation of religion there is an inherent balancing of the interests represented by the "free exercise" and the "establishment" clauses of the first amendment. See the concurring opinion of Mr. Justice Stewart in *Sherbert* v. *Verner*, 374 U.S. at 413. We cannot say that the balance struck by

---

[4] Subsec. (h) was added to sec. 1402 by sec. 319(c), Pub. L. 89–97 (July 30, 1965).

[5] Mr. Justice Stone stated in a dissent in *Heiner* v. *Donnan*, 285 U.S. 312, 338 (1932):
"No tax has been held invalid under the Fifth Amendment because based on an improper classification, and it is significant that in the entire one hundred and forty years of its history, the only taxes held condemned by the Fifth Amendment were those deemed arbitrarily retroactive."

Congress in enacting the exemption clause here in controversy is constitutionally impermissible.

Accordingly,

*Decision will be entered for the respondent.*